Jennings *vs* Shropshire.

ERROR TO THE GARRARD CIRCUIT. .

*Sureties.   Attachments in chancery.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

CHANCERY.

*Case* 97.

*June* 21.

This bill was filed by Jennings in October, 1846, under the first section of the act of 1828 for the relief of securities, &c. (2 *Stat. Law,* 1441.)   It alledges that the complainant is the security of defendant, Shropshire, in an injunction bond under the penalty of $1000; that Shropshire is in straitened circumstances, and if he should be decreed to pay the debt injoined, the complainant will suffer irreparable injury; that Shropshire is about to remove himself and property out of this Commonwealth; that he has now in possession about . twenty horses, which he will in a short time, and is about to remove out of the Commonwealth, unless restrained, &c.   The complainant prays for a restraining order, and that finally the horses may be subjected for the reimbursement of whatever he may be compelled to pay as security, &c., and for general relief. An attachment or restraining order was accordingly obtained, and Shropshire immediately replevied the horses by bond, under the penalty of $2,000.

In his answer filed in July, 1847, Shropshire, after demurring to the bill, denies that he is in straitened circumstances—denies that if the decree is against him in the case referred to, the complainant will have to pay one cent—denies that he is going to remove himself and property out of the Commonwealth, but says he has a drove of horses which he intends taking to the south for sale, to return home as soon as practicable, all of which he says was well known to the complainant and others—denies any intent to defraud, hinder or delay the complainant or any one else, and avers that he will leave property more than enough to pay all his debts, and consequently that the complainant is in no danger as his security, &c.

Case stated.

Demurrer and answer.

JENNINGS
vs
SHROPSHIRE.

Decree of the Circuit Court.

The statute of 1828 for giving relief to sureties, was intended to give them protection, not a means of harrassing their principal. The removal of the principal or of his property, intended by the statute, must be such as would probably render the surety liable to pay the debt, or render more difficult the indemnity. The statute must not be so construed as to embrace every case of temporary removal of person or property—nor so as to embrace no case of removal except a permanent removal—but only where such intended removal might induce a reasonable apprehension of increased danger to the surety.

In January, 1849, the cause came on for hearing upon bill and answer, without additional pleadings or evidence, and the bill was dismissed. It is now alleged that the Court erred in dismissing the bill, and in not decreeing for the complainant on bill and answer.

The first section of the act referred to, authorizes a security, if the principal be about to remove himself or his property from the Commonwealth, before the debt is due and leaving it unpaid, to proceed against him by way of attachment or writ of *ne exeat*, in the same manner as he could if the security had been compelled to pay the debt—and the Court is authorized to hear and determine all matters involved, and to make such decree as will afford indemnity to the security.

The most serious question arising on the construction of the first section of this statute, is as to the true import of the phrase "about to remove himself or his property," used to describe the case in which the prescribed remedy may be resorted to. If an individual merely crosses the line from this into another State, though intending to return and actually returning in an hour, he has actually removed himself, that is, his person, out of this Commonwealth for the time; and if in such case he rides one of his own horses, though he may have left a large farm and many horses and other property in the State, he may, in a like sense, be said to have removed his property from the Commonwealth. But is this the sort of removal or intended removal of himself or his property, for which the statute intended to provide? We think it is not. The statute intended to place in the power of the security, the means of protecting himself, and not an instrument by which he might, without necessity, vex or harrass his principal. We are satisfied that the removal intended by the statute, whether of the principal himself or of his property, must be such removal as if actually effected, would under the circumstances existing at the time, affect the safety of the security, by rendering it more probable that he would have to pay the debt, or by defeating, obstructing, impairing or rendering more difficult or doubtful, his remedy for indemnity or reimbursement,

The statute should not be so construed as on the one hand to limit the remedy to the case of intended permanent removal of the principal, or of all of his property, or on the other to extend it to every case of intended absence, however temporary, or of the removal of any portion, however minute, of the principal's property. But it should, in reference to its objects and its remedial character, be so construed as to give the remedy on the ground of intended removal of the principal or his property, wherever such removal might induce a reasonable apprehension of increased danger to the security, and thus furnish reasonable ground for restraining it by the interposition of the Chancellor. Under this view of the statute, we are of opinion that the bill makes out a case, though not a very strong one, for the remedy. Even if it should not be inferred from the statements of the bill, that the principal obligor was about to remove himself permanently, or to remove all of his property from the State; yet if as alledged, he was in straitened circumstances, the removal of twenty horses and his own absence, though not intended to be permanent, might seriously affect the safety and the remedies of the security, and might reasonably induce the serious apprehension of danger which he expressed.

But although the bill should be deemed sufficient upon demurrer, we think the substantial ground of the equity which it presents, are removed by the denials of the answer. Upon bill and answer, the defendant was not in straitened circumstances, the twenty horses constituted but a portion of his property, his intended absence was to be temporary only; for the purpose of selling the horses and bringing back the proceeds as quickly as practicable; and the presumption from the failure of the complainant to make any additional allegation or proof during the pendency of the suit for about two years, is that the defendant had made his trip with the horses and returned with the proceeds of sale, and that the condition of the security was no worse, nor in fact really hazardous.

Whether before the hearing the injunction had been dissolved or perpetuated, or whether it was still pending

*Margin notes:*

JENNINGS
vs
SHROPSHIRE.

Where the allegations of the bill, though sufficient to warrant the Chancellor in granting the relief prayed are denied by the answer and not sustained by proof, there can be no decree for complainant.

The Chancellor has the power to retain a bill filed

by a surety for
indemnity under
the statute of
1828, at the sug-
gestion of the
complainant, un-
til the liability
or its extent, is
determined, but
should not do so
ex officio.

does not appear. It may, however, be assumed as certain, that the security had not then paid any thing, and that there was no imminent danger of his being compelled to do so. And although it should be conceded that it would have been proper for the Court, upon suggestion of the complainant, to have retained the cause until the securityship, if not already at an end, should be determined, whereby the replevy bond would have remained as an ultimate indemnity, yet as no such suggestion was made and the cause went to final hearing, we do not perceive that the Court could properly have rendered any other decree than one dismissing the bill. There was no cause nor ground for ultimate relief. And it was not the duty of the Court, *ex officio*, and without any suggestion as to the existing state of the facts, and when the grounds of equity set up in the bill had either been denied or were presumably removed, to have continued the cause and thereby continued the obligation of the surety in the forthcoming or replevin bond. The complainant is not precluded from any further remedy which may be authorized by the facts hereafter alleged.

Wherefore, the decree is affirmed.

*Dunlap* for plaintiff.